UNITED STATES DISTRICT COURT

FILED - **USDC** -NH
2022 JUN 29 PM1:43

DISTRICT OF NEW HAMPSHIRE

Shirley M. Wood

Plaintiff

vs.

Civil Action No $22$-CV-$235$

U.S. Bank Home Mortgage

U S Bank

Defendants

## COMPLAINT

1.) Shirley M. Wood
21 Granite Ridge Drive
Belmont, NH 03220
603 528-2310

2.) U.S. Bank Home Mortgage
P.O. Box 790415
St . Louis, MO  63179-0415
1 800 365-7772

3.) U S Bank
BC-MN-H15F
800 Nicollet Mall FL 2
Minneapolis, MN  55402-4505
1 612 303-6000

4.) Jurisdiction and Venue :

Jurisdiction: 28 USC Chapter 85 District Courts; Jurisdiction §1331, Federal

question, states that, "The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States". The

banking industry's mortgage services are subject to Federal laws. Claim 1 cites state

and federal law, Claims 2, 3 and 4 are based upon federal law.

Venue: 28 USC Chapter 87, District Courts Venue; §1391, Venue generally, (b)(2): "a

judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred, or a substantial part of property that is subject of the action is situated."

## Statement of Claim :

5.) Background Information:

Plaintiff, Shirley M. Wood, entered into a thirty-year (30) mortgage with Citizens Bank on

November 02, 2001, for property located within Granite Ridge Condominium

Association, hereinafter referred to as "Association", at 21 Granite Ridge Drive,

Belmont, New Hampshire, 03220. The Association is comprised of twenty-six homes

situated over three streets, Oak Drive, Hemlock Drive, and Granite Ridge Drive, which

are single family occupancies. An assignment of real estate mortgage was filed in

Belknap County on May 06, 2002, which stated, Citizens Mortgage Corporation, does

hereby grant, sell, assign, transfer, and convey, unto Mortgage Electronic Registration

Services, Inc., in Flint, MI, (MERS). Citizens Bank, at the time of purchase, did not keep

their loans, but immediately sold them to other lenders. Letters to the plaintiff, following

the signing of the loan with Citizens Bank, stated, "Dovenmuehle Mortgage, Inc. will be

servicing your mortgage. The letters continued, "The servicer of your loan will

eventually be Chase Manhattan Mortgage Corporation." (November 02, 2001).

Subsequently, a letter from Dovenmuehle Mortgage, Inc. on April 15, 2002, stated that

"…the right to collect payments from you, is being assigned, sold, or transferred from

Dovenmuehle Mortgage, Inc. to U.S. Bank Home Mortgage, effective May 01, 2002."

U. S. Bank Home Mortgage and U S Bank may each act as agent, and /or servicer.

There was no letter received regarding Fannie Mae ownership, however, the plaintiff

was verbally informed of the ownership in approximately May 2005, by defendant. In

June of 2021, the plaintiff contacted Fannie Mae and received a reply, stating

confirmation that Fannie Mae, does own the plaintiff's loan, for 21 Granite Ridge Drive,

in Belmont, New Hampshire. The plaintiff paid dues to the Association until May, 2007,

when it was realized that the Association membership contained non-owners and the

plaintiff's property had never received repairs and maintenance. The plaintiff sued the

Association Board of Directors in 2009, in Belknap County Superior Court, Laconia, for

roof repair, lack of fiduciary duty, and other claims, but did not prevail. The Association

was issued a finding of dues through September 2009 and attorney fees, on which the

plaintiff was allowed to make payments. In 2012, the Association's Attorney, V.

Richards Ward Jr. Esquire, hereinafter referred to as "Attorney", instituted suit in New

Hampshire 4th Circuit District Court-Laconia, for condominium dues for the period,

October 2009 to November 2013. The 4th Circuit District Court-Laconia issued an order

on December 17, 2013 for $12,750, dues and attorney fees. Attorney did not ask for a

Writ of Attachment at that time. In September 2018, Attorney filed a Motion for a Writ of

Execution on Scire Facias. On November 07, 2018, the 4th Circuit District Court-Laconia

granted Writ of Execution on Scire Facias. The plaintiff lost her appeal on the Scire

Facias Writ of Execution and Attorney presented an incorrectly written Writ of Execution

(wrong amount, $127,500) to Belknap County, New Hampshire Sheriff for sale. (September 24, 2019). The Belknap County Sheriff set a date (December 10, 2019) for Sheriff sale and the plaintiff filed a "Motion For Change Of Writ of Execution", on November 14, 2019, to place the correct amount on the Writ and to remedy other discrepancies. Plaintiff informed the Belknap Sheriff's Department of the Motion For Change and of the fact that a Sheriff's sale in New Hampshire is subject to the first mortgage, without other priority, if entered into prior to January, 2011, and suggested that the Sheriff be careful who received funds from the sale. Also, on November 18, 2019, plaintiff informed defendant of the Sheriff's Notice. On December 03, 2019, the 4th Circuit District Court-Laconia issued a "corrected" Writ of Execution for $16,180.05, which included attorney fees, cost and interest. On December 06, 2019, the plaintiff informed the Sheriff of cancellation of the original Writ, and filed a copy of cancellation with Belknap County Register of Deeds. On January 14, 2020, the Belknap County Sheriff rescheduled the Sheriff's sale for February 19, 2020. On February 11, 2020, the plaintiff sent the Sheriff a copy of Attorney's filing of a letter with 4th District Circuit Court-Laconia, dated January 31, 2020. Attorney's wording in the filing indicated that "the Defendant has satisfied, in full, the judgment entered against her in this action." In the letter, to the Sheriff, plaintiff requested to know who had received payment, of the Writ, and indicated that she did not authorize or request any payment. Deputy Nadeau, of the Belknap County Sheriff called the plaintiff to answer her questions, and said that Attorney called him and indicated that the corrected Writ was cancelled, and that Attorney had sent a request in writing, On May 07, 2020, the Belknap County Sheriff filed Return of Writ of Execution, to 4th District Circuit Court-Laconia, marked "unsatisfied", per the Sheriff's letter. On January 09, 2020, without the plaintiff's

4

knowledge or approval, Attorney faxed a "Notice Of Lien Pursuant to RSA 356-B:46 and Demand for Cure of Delinquency" to Taylor Donahue, HOA/Condo Specialist for U S Bank National Association in Owensboro, Kentucky, at the same address where the plaintiff has made mortgage payments for many years, requesting $33,925.00, "for the balance on the account" of the plaintiff's condominium dues. On January 14, 2020, Attorney faxed U S Bank National Association an additional, "Amended Notice Of Lien Pursuant to RSA 356-B:46 and Demand for Cure Of Delinquency", for the amount of $15,471.44, equaling a total of $49,396.44. The request asked that the check go to President William Caruso, at the Association. (Not ever President of the Association, to the plaintiff's knowledge.) Some subsequent payments of requested "dues" were also noted to unknown Association persons at the address of Attorney. Additional requests were entitled, "Notice of Delinquency In Payment Of Condominium Association", and "Notice Of Intent To Record Memorandum of Lien Pursuant to RSA 356-B:46". All requests by Attorney which were accepted and paid by defendant, are hereinafter referred to as "Notice" or "Notices". The plaintiff had not received a copy of the first two (2) requests, the Notices were requested by the plaintiff and received from defendant, Customer Complaints in Eagan, Michigan. The $33,925.00 went into the escrow account of the plaintiff, dated January 10, 2020. Attorney's Notice was dated January 09, 2020. Amounts were requested from the defendant, on January 09, 2020, January 14, 2020 (amended), April 16, 2020, July 15, 2020, December 22, 2020, January 22, 2021, July 21, 2021, August 03, 2021, November 02, 2021, January 18, 2022, totaling $61,682,75. Defendant continued to place amounts from Attorney's Notices which add on to the mortgage statement, within the plaintiff's escrow account. Amounts were placed into escrow account by the defendant dated January 10, 2020, January 16,

5

2020, April 28, 2020, August 21, 2020, March 09, 2021, and August 06, 2021, totaling $57,797.71. When recorded within the "Customer Facing Transaction History", the defendant refers to Notices as, "Lien/Tax Distribution". On plaintiff's monthly invoice defendant refers to the Notices paid as "additional tax distributions", and adds the distributed amounts into plaintiff's escrow account. As payments to the Association are made, defendant re-projects a new mortgage payment amount for the plaintiff's monthly payment. Payments were re-projected on January 27, 2020, May 12, 2020, September 08, 2020, December 15, 2020, and December 20, 2021.After the first two (2) payments were distributed by defendant the plaintiff's required monthly payment rose from $863.76, per mortgage contract, for March 01, 2020, to $4,980.13 per month for April 01, 2020. The plaintiff wrote to defendant stating she could not afford the re-computed payment, and the defendant subsequently reduced the payment to $1921.04 per month. The plaintiff has written to defendant, numerous times regarding the incorrectness of the escrowed payments per federal and state law, amount discrepancies, lack of legal position of the persons receiving funds, and other issues; but the defendant has held on to the positions that the defendant is protecting "our" interest, as New Hampshire is a super lien state, and plaintiff signed a condo "rider" with the original mortgage from Citizens Bank. The plaintiff has paid, the original contracted mortgage payments on time, through all of the correspondence, escrowing and payment of Notice activity. The plaintiff has paid property tax, which is escrowed by the defendant, on time each year since entering into the loan, at 21 Granite Ridge Drive. The mortgage payments, (interest, principal, and Belmont New Hampshire taxes) have been applied to her account, usually suspended until payment plus calculated escrow shortage (which is caused by payments to Association), equaled the new required

payment. In response to Attorney's "collection action", defendant paid each requested amount as alleged delinquent dues, attorney fees and charges, without the plaintiff's approval, verification of amounts, or the benefit of Federal or New Hampshire's laws; by having its vendor, CoreLogic Tax Services, LLC, in Irving, Texas, a tax processing firm, issue checks for approximately requested amounts, without court action, to the Association, at Attorney's address, in Wolfeboro, New Hampshire. Because the plaintiff paid only the contracted amount, an amount equal to the requested dues portion became delinquent each month. Since the first payment to the Association was made from the plaintiff's escrow account, defendant has frequently corresponded with the plaintiff from several locations. Defendants and U S Bank National Association, (a Delaware National Association) are all stated to be subsidiaries of the parent corporation, U S Bancorp. Subsidiaries normally are separate legal entities. Past due letters, foreclosure plan information, loan modification offers, have all been sent from the defendants at various locations. On January 03, 2022, and February 23, 2022, defendant sent plaintiff a Notice of Default, allowing one month for funds due to be sent to Owensboro, Kentucky. Notice of Default indicated that payments could be sent to Owensboro, Kentucky, but in March 2022, defendant refused to accept monthly payments from the plaintiff. The balance for suspense account funds, as of February 2022, were also returned. The payments for March, April and May 2022, and the suspense amount were returned to the defendant, two (2) and three (3) times but were again not accepted. On April 04, 2022, defendant sent the plaintiff a letter indicating that "due to the status" of the plaintiff's mortgage account, "we are initiating a foreclosure action." The defendant referred the plaintiff's account to Bendett & McHugh P.C., a law firm in Farmington, Connecticut.

7

6.) Claim One

Negligence, claim goes to defendants.

Accepted and paid requests for alleged dues, without care.

Between January, 2020, and August, 2021, defendant accepted and paid, six (6) requests, totaling $57,797.71, for alleged condo dues to Association without proper attention to duties and responsibilities which are normally assumed by servicers of loans. The defendant should have anticipated that accepting and paying Attorney Notices would cause the plaintiff an exceedingly large, unrealistic loan payment and would finally lead to the injury of foreclosure. Defendant is in a position wherein the laws specify responsibility. Servicers are continually overseen by federal agencies and are subject to federal laws and regulations; however, in the instance of servicer policies and procedure regulations, 12 CFR Appendix Supplement 1 To Part 1024, - Official Bureau Interpretation, contains instructions that allow a servicer may determine the specific policies and procedures, it will adopt, and the methods by which it will implement those policies and procedures, so long as they are reasonably designed to achieve the objectives of §1024.38(b). (Section 1024.38(a) 1, Policies & procedures, Official Interpretation, Consumer Finance Protection Bureau). Adoption and implementation of policies and procedures for the servicer personnel are lawfully the responsibility of the defendant. None of the Notices which were accepted by the defendant from Attorney were legally enforceable documents. Attorney's request of Notice, dated January 09, 2020, to servicer, Ms. Sheridan, in Owensboro, Kentucky, demanding $33,925.00, for balance in order, "to pay the amount in full", indicated that Ms. Sheridan requested the balance. The defendant did not notify the plaintiff of Attorney's Notice, nor did the

8

defendant obtain any knowledge of the New Hampshire state laws, which were pointed

to in the Notice. The defendant also did not review the Notice for reasonableness before

accepting, by entering the $33,925.00 into the plaintiff's escrow account, only one day

after Notice, on January 10, 2020, and having the Notice paid on January 24, 2020.

New Hampshire RSA §356-B46 I.(a), states that, "The unit owners' Association shall

have a lien on every condominium unit for unpaid assessments levied against that

condominium unit in accordance with the provisions of this chapter and all lawful

provisions of the condominium instruments, if perfected as herein provided. The said

lien, once perfected, shall be prior to all other liens and encumbrances except (1) real

estate tax liens on that condominium unit, (2) liens and encumbrances recorded prior to

the recordation of the declaration, and (3) sums unpaid on any first mortgages or first

deeds of trust encumbering that condominium unit and securing institutional lenders."

New Hampshire RSA §356-B:46 I.(c), describes how the lien for regular monthly

common unpaid assessments for the 6-month period immediately preceding the filing of

the lien memorandum shall be prior to the first mortgage. New Hampshire RSA §356-

B:46 I.(c), is the section that Attorney was attempting to utilize with his Notices to the

defendant. The plaintiff informed the defendant several times that New Hampshire RSA

§356-B:46 I.(d) indicates that the priority lien rights established under RSA §356-B:46

I.(c) shall not apply to any mortgage executed prior to the effective date of the section.

New Hampshire RSA§ 356-B:46 I.(c), became effective on January 1, 2011, the plaintiff

entered into her mortgage on November 02, 2001. New Hampshire RSA §356-B:46 III.,

states, "The unit owners' association, in order to perfect the lien given by this section, shall file, before the expiration of 6 months from the time such assessment became due and payable in the registry of deeds in the county in which such condominium is situated, a memorandum, verified by the oath of the principal officer of the unit owners' association…". Many of the required perfections do not exist or were not filed properly or on time. New Hampshire RSA §356-B:46 IV., states that "No suit to enforce any lien perfected under paragraph III shall be brought after six (6) years from the time when the memorandum of lien was recorded…". There has been no suit for any unpaid assessment dues since November 2013. A properly perfected lien cannot be enforced without court action. Some of the Notices which were accepted and paid by the defendant, represent amounts which are outdated by the six (6) year limitation. The Writ of Execution on Scire Facias, which was obtained by Attorney for dues period October 2009 to November 2013, was returned unsatisfied, and could not be enforced if reissued because the Federal Housing Finance Agency, as conservator for Fannie Mae, will not allow the priority lien sale of government owned property, even if state laws were properly adhered to. Attorney never had a Writ of Attachment for dues period October 2009 to November 2013. The first two (2) Notices, accepted by defendant, from Attorney totaled $49,296.44. Attorney directed the defendant, in his January 09, 2020, letter to "note carefully" that "amount owed on this unit is fluid with the passage of time." The plaintiff, if notified, by the defendant at the acceptance date, would have explained that Attorney's amounts owed were incorrect. A verification for reasonableness of accepted Notice amounts, prior to acceptance was not a consideration of the defendant.

10

Lien amounts per New Hampshire RSA §356-B46 III., which explains how to properly

perfect a lien, should contain only the amount of unpaid assessment. Under New

Hampshire RSA §356:B, attorney fees and costs are available to prevailing party when

awarded by the court. A brief look at state law, New Hampshire RSA §356-B:46 IV., (no

suit after six years) and the knowledge that a year's dues are approximately $3600.00,

would easily show the defendant that $21,600 (6X$3600) is not equal to the $49,396.46

and indicates that Attorney Notices were inaccurate. The defendant did not take any

action relative to the plaintiff's explanation that her mortgage is not subject to New

Hampshire lien priorities. Letter from defendant dated April 29, 2022, states, "funds

were distributed per terms of executed documents". In the same letter, the defendant

states that our, "stance remains unchanged" and "we are unable to provide legal

assistance". A condominium rider has no language regarding paying any and

all amounts requested and the condo rider within the original mortgage does not meet

Fannie Mae's guidelines. The defendant requested, accepted and erroneously paid

Attorney's lien Notices based on the belief that Attorney properly presented Notices, per

New Hampshire law, but defendant would not respond to plaintiff's explanation that

defendant had not attempted to interpret the exact same New Hampshire law.

In Fannie Mae's Servicing Guide, section F-1-05, Expenses, Defined Expense

Reimbursement Limits, speaking of defendant's ability to recover advanced funds,

pages 572, 573, explains, "This procedure contains the amount that Fannie Mae will

pay for its share of expenses when specific reimbursement expense limits are defined".

Under Escrow Expenses, "HOA Dues  From the foreclosure sale date up to REO sale

11

date (disposition) – Reimbursement of dues incurred prior to the foreclosure date will be

decided per each state's statutes." In letter dated December 23, 2019, the defendant

had taken the position that New Hampshire is a super lien state, and therefore the

defendant had requested "pay off" figures from the Belknap County Sheriff Department,

(no figures were available from the Sheriff), to protect what defendant called "our"

interest. Whether the defendant meant the defendant's interest or Fannie Mae's interest

is unclear, but the defendant is clearly not affording proper attention to its duties and

responsibilities as pertain to the interests of the plaintiff and of the federal government.

The defendant should have been aware of the Federal Housing Finance Agency's

Statement on HOA Super-Priority Lien Foreclosures dated April 21, 2015, paragraph 1,

which cites Title 12 USC §4617(j)(3)…"[no] property of the Agency shall be subject to

levy, attachment, garnishment, foreclosure, or sale without consent of the Agency." On

March 25, 2022, servicer Nicole T., responded to the plaintiff's letter dated February 28,

2022, stating, "Upon review of the matter, we find your arguments pursuant to state law

to be unpersuasive in light of our contractual right to pay the monetary assessments."

The question of the Federal Housing Finance Agency's approval was not answered by

the defendant, but Federal Housing Finance Agency's Statement on HOA Super-

Priority Lien Foreclosure, dated April 21, 2015, paragraph 2, last sentence, explains,

"Consequently, FHFA confirms that is has not consented and will not consent in the

future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien

or other property interest in connection with HOA foreclosures of super-priority liens."

The defendant's actions of foreclosure for Association dues Notices from Attorney do

not show a proper care for obligation to the Federal Housing Finance Agency and thereby failed its duty to the plaintiff. If it were not for the defendant accepting and paying Notices with incorrect balances, without court action and in disregard of state and federal law, the plaintiff would not have been harmed by the resulting foreclosure action.

7.) Claim  Two

Breach of law, claim goes to defendants.

Failed to follow procedure set out in federal regulation, servicing practices, which could have avoided, if conformed with, the necessity to re-compute payments and subsequently avoided the accumulation of payment delinquencies. Beginning with the first mortgage loan payment after the defendant placed two (2), January 2020 Notice amounts into the plaintiff's escrow account, the mortgage payments were posted to a suspense account until the suspense amount equaled a sufficient amount to pay the re-computed payments. The plaintiff wrote to defendant requesting that defendant follow the servicing procedure for periodic payments as outlined in federal regulation 12 CFR §1026.36 (c), "Servicing practices. For purposes of this paragraph (c), the terms "servicer" and "servicing" have the same meanings as provided in 12 CFR 1024.2(b).

(1) Payment processing. In connection with a closed-end consumer credit transaction secured by a consumer's principal dwelling:

(i)      Periodic payments. No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting

13

of negative information to a consumer reporting agency, or except as

provided in paragraph (c) (1) (iii) of this section. A periodic payment, as

used in this paragraph (c), is an amount sufficient to cover principal,

interest, and escrow (if applicable) for a given billing cycle. A payment

qualifies as a periodic payment even if it does not include amounts required

to cover late fees, other fees, or non-escrow payments a servicer has

advanced on a consumer's behalf."

The plaintiff has repeatedly requested that the amounts paid by the defendant to the

Association, through Attorney Notices, which are in no way defined in her escrow, be

placed in a separate account until suit of the Association can be accomplished. Letter

received from the defendant, dated April 29, 2022, stated that "we are unable to honor

your request to hold the dispursed funds in a separate account." None of the

defendants' letters addressed why 12 CFR §1026.36 (c)(1)(i), was not the correct

regulation to identify how a periodic payment should be applied. Given the plain

meaning of periodic payment, within the federal regulation 12 CFR §1026.36 (c)(1)(i),

the monthly amount paid by the plaintiff is a periodic payment, that should be applied

when paid, each month. If, the plaintiff's monthly payment of principal, interest, and

municipal taxes, were applied as received, a delinquency in periodic payments would

have been avoided. The amounts of periodic payments that the plaintiff has paid each

month, on time, were always taken from the explanation of Total Due, on each monthly

mortgage statement. Principal, interest and tax-city were added together to make-up the

check for the monthly payment. Defendant processed each payment, between April

2020 and February 2022 by suspending the plaintiff's payment of principal, interest, and

tax-city instead of applying a full periodic payment. Title 12 Chapter X Part 1026, Truth

In Lending Act (Regulation Z) is a strict liability law; in which provision 12 CFR

§1026.36 (c)(1)(i) was violated by defendant's failure to record plaintiff's monthly

payments as defined periodic payments. Fannie Mae's Servicing Guide, Chapter C-1

Processing Mortgage Loan Payments, C-1.1-01: Servicer Responsibilities For

Processing Mortgage Loan Payments, states, "The servicer must…Note: Funds

intended by the borrower for first lien mortgage loans must not be reallocated as

payment towards subordinate lien". (Fourth Note, pages 210, 211, 11/12/2014). Failure

to post the periodic payments resulted in the breach of law and the defendant's liability.

The violation of 12 CFR §1026.36 (c)(1)(i), occurred with each payment.

8.) Claim Three

Breach of law, claim goes to defendants.

The defendant has placed negative credit information on the plaintiff's credit report

regardless of whether or not the defendant was in possession of a current qualified

written request. The defendant reported negative information without consideration for

plaintiff or federal law 12 USC §2605(e)(3), Protection Of Credit Rating, "During 60-day

period beginning on the date of the Servicer's receipt from any borrower of a qualified

written request relating to a dispute regarding borrower's payments, a servicer may not

provide information regarding any overdue payment, owed by such borrower and

relating to such period or qualified written request, to any consumer reporting agency

(as such term is defined under section 1681 a of Title 15)." The plaintiff's credit report,

from Experian, dated May 19, 2022, shows defendant reported varying amounts of days past due, for August 2020 through July 2021; no data for August 2021 through February 2022; 180 days past due for March and April 2022 and foreclosure proceedings started for May 2022, with a total amount past due of $30,256, shown as of May 19, 2022, sent to an attorney. Letters from the plaintiff to the defendant have extended over many of the months in which the defendant reported negative credit information. Letters with requests to accept payments in March, April and May, 2022, were processed at approximately the same time as the negative credit reporting for the same months. Most debts per 15 USC §1681 a(4), have a credit reporting limit of seven (7) years. Within the $57,797.71 total Notice amount due, that was paid to the Association by the defendant, there is a large amount that represents dues from over seven (7) years ago. On December 18, 2020, defendant sent plaintiff a letter stating that plaintiff's account was "not eligible" for escrow account waiver because "loan must be current, along with 12-month payment history with no 30-day delinquencies and a 24-month payment with no 60-day delinquencies." Defendant's incorrect reporting of negative credit information resulted in the loan status of not current, which made it impossible for the plaintiff to qualify for escrow waiver. The defendant's reporting of what was considered to be delinquent payments, without verifying if a qualified request was in progress, and the inclusion of negative credit information, greater than seven (7) years old, fails to meet the requirements of USC § 2605(e)(3), Protection of Credit Rating, and therefore the defendant is in violation of statute.

9.) Claim Four

Negligence, claim goes to defendants.

Twice offered, incorrect Fannie Mae Loan Modification, without care that any servicer should take to prevent harm in a loan offer. On May 01, 2021, the plaintiff's outstanding principal balance, per monthly statement was $57,813.54. The principal had been paid on for twenty-one years. On July 13, and July 30, 2021, defendant from Customer Assistance Team, sent the plaintiff, a Fannie Mae final modification agreement, with proposed terms of the modified mortgage. The plaintiff had not seen the agreement prior to receipt in July, 2021, and she did not request to execute a loan modification. The modified mortgage terms summary showed:

| | |
|---|---|
| Unpaid Principal Balance | $111,338.95 |
| Modified Note Rate | 2.8750 % |
| Modified Maturity Date | 04/01/61 |
| Modified Principal and Interest Payment | $390.60 |

The modification agreement did not explain how the new unpaid principal balance was computed, or from which month the account information was taken. There were several problems with the written modified mortgage. The plaintiff's escrow account contained both amounts that the plaintiff had paid into city-tax and amounts that the defendant had paid to the Association through Attorney's Notices. The amounts that the plaintiff paid into escrow for city-tax should not be included in the capitalization which would again be subject to forty (40) years of interest. The escrow advance balance should have been evaluated to separate Notice payment amounts from paid city-tax. In addition, the Notice advancements should not be spread over forty (40) years. When the defendant was re-computing the plaintiff's monthly payment because of Attorney's

17

Notices, the longest amount of time that the advances could be spread over was five (5) years. Within the modified loan, the advances, as part of the unpaid principal balance for Notices would be spread over forty (40) years. The monthly principal and interest payment of the modified loan were also incorrect. The defendant created a modified loan for an additional forty (40) years, which was to begin on May 01, 2021.Plaintiff's approximate computation of total modified loan payments: ($390.60 modified loan payment X 12 )  X (40) = $187,488 total loan payments; (modified unpaid principal) + ( rate at 2.8750% X modified unpaid principal) = total modified principal + interest, ($111,338.95 + $32,009.95 = $143,348.90). Total payments $187,488.00 – modified principal and Interest ($143,348.90)  = $44,139.10. The defendant offered a Fannie Mae modified loan to be executed that contains over $40,000 of additional unexplained payments, when total principal plus interest is subtracted from total payments due over the term of the loan. The loan modification document states that an additional $1699.90 has been advanced on the plaintiff's behalf, but does not state exactly why funds were advanced. The advance was to be paid in full or spread over five (5) years adding $28.33 to new payment. The advance may well be additional payment to the Association upon Notice from Attorney. Loan modification was sent to plaintiff by defendant, Customer Assistance Team, but the agreement was between the plaintiff and U S Bank National Association, on behalf of National Association. The plaintiff did not have prior business with U S Bank National Association except that Attorney faxed all of the Notices to U S Bank National Association in Owensboro, Kentucky. A bank that is a National Association cannot accept a modified Fannie Mae loan written for forty (40) years. If the loan modification were executed, it may not have had a resolution. The plaintiff's suspense account which holds funds until sufficient amount to pay the re-

computed monthly required payment, was not mentioned in the modified loan document. On statement with scheduled due date of May 01, 2021, the plaintiff's suspense account contained $1817.42. On statement with scheduled due date of June 01, 2021, the plaintiff's suspense account contained $2684.34. The defendant did not consider the suspense when writing the modified loan. The plaintiff refused the Fannie Mae loan modification in July 2021. On August 19, 2021, the plaintiff received a letter from defendant advising, "This letter is to inform you that the Customer Assistance option has been revoked due to non-compliance with the terms required to maintain this option," Customer Assistance option is explained in the letter, "option refers to foreclosure alternatives such as forbearance, modifications account restructures, short sales and deeds-in-lieu of foreclosure." On September 07, 2021, in answer to plaintiff's letter, defendant stated, "On July 13, 2021 we sent the Final Modification Agreement letter providing the proposed terms of the modified mortgage. On July 20, 2021, we received your correspondence advising you do not accept any modification to your mortgage. The review of your account at this time has been cancelled and was closed on August 21, 2021." Because the plaintiff would not enter into a badly written Fannie Mae loan modification, she may no longer receive the customer assistance option and review of her account was cancelled and closed. If the plaintiff signed the document, which concludes in 2061, she is certain that the terms of the loan payment would never be corrected. The defendant's letter dated September 07, 2021 states, "U S Bank strictly adheres to investor servicing guidelines, internal policies, as well as state and federal regulations regarding the servicing of your account. Compliance with these regulations ensures we handle your account with integrity, accuracy, and privacy. Our policies are not arbitrary, and we assess them uniformly and without prejudice." Also

within the September 07, 2021 letter, "After conducting a reasonable investigation in consideration of the Notice of Error, we have determined that no error occurred." The defendant is very sure that all of its service, where the plaintiff has concern is flawless. The plaintiff has suffered over the lack of concern shown by the defendant in presenting a Fannie Mae loan modification that is replete with errors and the defendant is not able to exercise its duty of care to the plaintiff because of the refusal to accept that errors have occurred. The pain and anxiety of having the mortgage loan balance double after paying on it for twenty-one years is devastating. Fannie Mae Servicing Guide, section F-1-27:Processing a Fannie Mae Flex Modification (06/09/2021) and section D2-3.2-07, Fannie Mae Flex Modification (09/09/2020) contain detailed instructions, available to the defendant regarding Fannie Mae loan modification. The harm of the defendant's offer of a modified loan document with many errors and subsequent removal of plaintiff's services, was the result of defendants' failure to fulfill an established duty of care.

Relief Requested from the Court :

The plaintiff respectfully requests the following relief:

    1.) To be returned to position prior to first Notice on January 09, 2020 and have plaintiff's payments (January 2020 through February 2022) properly applied without late charges or any other fees assessed, or Notice documents applied; or show that the plaintiff's mortgage is paid up-to-date, as of February 2022, and remove all amounts paid to Association, including fees and all other charges, before and after foreclosure activity;

    2.) For damages for failure to comply with federal regulation 12 CFR §1026 (c), Servicing practices, for applicable months from filing date;

    3.) For damages for failure to comply with USC §2605 (e) (3), Protection Of Credit Rating;

    4,) For $2500.00 for the negligence in presenting the incorrect Fannie Mae loan modification;

    5.) For Plaintiff's costs and fees.

Shirley M. Wood v U.S. Bank Home Mortgage, US Bank

Date _____ 6/29/22 _____   Signature _Shirley M. Wood_ pro se

Name        Shirley M. Wood

Address     21 Granite Ridge Drive

            Belmont, NH  03220

Telephone No  603 528-2310

22